690 A.2d 739

**COMMONWEALTH of Pennsylvania**

v.

**Chad HELM, Appellee.**

Superior Court of Pennsylvania.

Submitted Jan. 13, 1997.

Filed March 6, 1997.

Diane L. Turner, Assistant District Attorney, Williamsport, for Commonwealth, appellant.

Mark Cichowicz, Public Defender, Williamsport, for appellee.

Before POPOVICH, SAYLOR and HESTER, JJ.

SAYLOR, Judge:

This is an appeal by the Commonwealth from an order entered in the Court of Common Pleas of Lycoming County

granting the motion of Appellee, Chad Helm, to suppress certain evidence.[1]  We affirm.

The following facts were established at the suppression hearing:  On March 29, 1995, at approximately 1:30 a.m., Officer Mark Giza of the South Williamsport Bureau of Police was dispatched to East Second Street in Williamsport to investigate a report of a suspicious person running away with an object on his shoulder.  Officer Giza travelled in the direction in which the report had indicated that the person was headed, and noticed a red Ford parked along the street, with its lights off and its engine running.  Appellee was seated alone inside the car.  The officer approached Appellee and asked him to produce identification.  Appellee was unable to do so, but identified himself as Chad Helm. When the officer asked Appellee why he was parked there, Appellee replied that his car had overheated, and he was allowing the engine to cool down.  Officer Giza found this response odd, because of his belief that a car which is parked with its engine idling would tend to overheat faster than a car in motion, due to less air intake.  The officer then asked Appellee where he had come from; Appellee first responded that he had come from Williamsport, and later answered that he was coming from a friend's house in South Williamsport, but could not supply the officer with the name or address of the friend.  Throughout the conversation, Appellee appeared nervous and jumpy, continually looking around the area.

Officer Giza asked Appellee to follow him to a parking lot approximately one block away, where the individual who had initially reported seeing a suspicious person was waiting. Appellee complied, and the officer spoke to the individual who had made the report; however, the individual stated that Appellee was not the suspicious person he had seen earlier, who had been carrying a box on his shoulder, and had set the

1.  The Commonwealth has certified that suppression of such evidence substantially handicaps its case, effectively terminating the prosecution of Appellee, and that this appeal is taken in good faith.  *See, Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985);  Pa.R.A.P. 311(d).

box down against a building, near a pine tree across the street from the parking lot.

Officer Giza returned to Appellee's car, and noticed a black gym bag within arm's reach of Appellee on the front seat of the vehicle. Appellee continued to appear nervous and jumpy. Concerned for his own safety, the officer asked Appellee what was in the bag, and received Appellee's consent to search the bag, which was empty.

At this point Officer Giza, having no information which would have given him reason to suspect that Appellee was involved in a serious crime, asked Appellee for permission to search his vehicle. Appellee consented, and in response to the officer's request, opened the trunk of the car. In the trunk was a stereo speaker with fresh pine needles and grass stuck to one of its corners. The individual who had initially made the report to the police identified the speaker as the "box" he had seen the suspicious person carrying. Appellee said that the speaker was his, but when the officer requested that he turn on the car's stereo, no sound came from the speaker. In response to Officer Giza's query, Appellee stated that he had just bought the speaker from "a guy" by the building where the suspicious person had been seen placing the speaker on the ground.

Officer Giza thereafter asked Appellee to get out of the car, and conducted a pat down search, assertedly for his own safety. The officer felt what he thought was folded money in Appellee's pants pocket, and asked Appellee if he had any money. Appellee replied that he did not. The officer then asked Appellee what he had in his pocket, and Appellee responded that he did not know. When the officer asked if he could retrieve the object, Appellee consented, whereupon the officer removed three one dollar bills. Appellee stated that he had forgotten about the bills.

Officer Giza testified at the suppression hearing that at this point, he believed that a crime had occurred, based upon his recollection that several cars had been burglarized during the previous week, and that he had received a report from the

Williamsport City Police that one of their suspects for the burglaries had been carrying a black knapsack. Accordingly, Officer Giza asked Appellee to be seated in the rear of the police vehicle, advising Appellee that he was not under arrest. After another officer arrived to remain with Appellee in the police car, Officer Giza went to investigate whether a speaker had been stolen from the area. Shortly thereafter, he was called back to the police car by the other officer, who informed him that he had given *Miranda* warnings to Appellee, after which Appellee gave an incriminating statement. Officer Giza then spoke with Appellee, who admitted that he and another individual named "J.T." had stolen the speaker from a pickup truck, and directed the officers to the truck, which was located twenty yards away from the police car.

Appellee was arrested and charged with conspiracy, theft by unlawful taking and receiving stolen property. Appellee filed a motion to suppress the evidence seized from his trunk, as well as all subsequently obtained evidence and statements, which motion was granted by the suppression court following a hearing. The Commonwealth subsequently filed this appeal, in which it raises a single issue:

> Whether a police officer who reasonably believes that criminal activity is afoot may raise a mere encounter with the defendant to the level of an investigatory stop and obtain a consent to search the trunk of defendant's vehicle?

The Commonwealth asserts that although the initial contact between Appellee and the police constituted a mere encounter, Appellee's subsequent conduct under the totality of the circumstances gave the officer reason to suspect that crime was afoot, and therefore the officer was justified in conducting an investigatory detention during which he received Appellee's permission to search the trunk of the car. The Commonwealth further asserts that the results of the search of the trunk, coupled with Appellee's behavior following the officer's discovery of the speaker, provided the officer with reasonable suspicion that Appellee had committed a crime, thus justifying the further detention of Appellee in the back seat of the police vehicle, where he was given *Miranda* warnings prior to mak-

ing his incriminating statement. Accordingly, the Commonwealth contends that the evidence seized from Appellee's car, as well as his subsequent statement, was lawfully obtained and should not have been suppressed.

Appellee, on the other hand, contends that because the nature of the encounter with the officer had escalated to an investigatory detention following the search of Appellee's belongings, the officer needed reasonable suspicion that Appellee was engaged in a serious crime in order to further detain him, and that because such suspicion was lacking, all evidence obtained as a result of the consensual search of the vehicle's trunk was properly suppressed.

██ It is well settled that police officers may have a mere encounter with an individual at any time, and are not required to have reasonable suspicion that criminal activity is afoot unless the nature of the encounter escalates to the level of an investigatory stop. *Commonwealth v. Jackson,* 428 Pa.Super. 246, 630 A.2d 1231 (1993), *allocatur denied,* 537 Pa. 647, 644 A.2d 733 (1994). Here, neither party disputes that at the time that the officer obtained Appellee's permission to search the trunk of the car, his interaction with Appellee was no longer a mere encounter, but rather had become an investigative detention, for which reasonable suspicion was required.

██ We agree with the suppression court's conclusion that, at the time Appellee was requested to open his trunk, he was being unlawfully detained, inasmuch as no articulable suspicion existed at that time that Appellee was committing a serious crime. After the fruitless search of the black gym bag, the officer had no reason to suspect that Appellee was engaged in criminal activity, and thus was not justified in detaining him for further questioning. *See, Commonwealth v. Lopez,* 415 Pa.Super. 252, 609 A.2d 177, *allocatur denied,* 533 Pa. 598, 617 A.2d 1273 (1992) (police officer's intuition does not constitute a reasonable ground to suspect that criminal activity is afoot). Accordingly, because the continued detention of Appellee was improper, Appellee's consent to the officer's search of his trunk was rendered ineffective, and the evidence

obtained as a result of such search was properly suppressed. *See, Commonwealth v. Pless,* 451 Pa.Super. 209, 679 A.2d 232 (1996); *Lopez, supra* (defendant's consent to search was tainted by illegality of detention and thus was ineffective to justify the search). Furthermore, because the search of Appellee's trunk was unlawful, all evidence and statements which were subsequently obtained were tainted, notwithstanding the *Miranda* warnings given to Appellee, and the suppression court did not err in ordering the suppression of such evidence.

Order affirmed.